**CIVIL MINUTES – GENERAL**   **'O'**

| Case No. | 2:18-CV-00240-CAS (AGRx) | Date | January 13, 2020 |
|---|---|---|---|
| Title | SHENON V. NEW YORK LIFE INSURANCE CO., ET AL. | | |

Present: The Honorable   CHRISTINA A. SNYDER

| Catherine Jeang | Laura Elias | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Scott Calvert | Edith Shea |
| Michael Horrow | |

**Proceedings:**   DEFENDANT NEW YORK LIFE INSURANCE COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT (ECF No. 50, filed December 2, 2019)

## I.  INTRODUCTION

This case arises out of a decision by defendant insurer New York Life Insurance Co. ("NYL") to deny a long-term disability coverage claim by plaintiff insured Ada Shenon.

Shenon filed this action in Los Angeles County Superior Court on December 11, 2017. See ECF No. 1-1 ("Compl."). NYL removed the action to this Court on January 10, 2018. ECF No. 1. The complaint alleges two California law claims for relief: (1) a claim alleging that NYL breached its contract to provide Shenon with insurance coverage, and (2) a claim alleging that NYL committed that breach in bad faith and in violation of the covenant for good faith and fair dealing that accompanies the insurance contract (the "bad faith claim"). In addition to her contract remedies, Shenon also seeks punitive damages in connection with the bad faith claim.

NYL filed the instant motion for partial summary judgment, and a separate statement of undisputed facts, on December 2, 2019. See ECF No. 50. NYL filed a corrected motion and separate statement of undisputed facts on December 9, 2019. See ECF No. 52-1 ("MSJ"), ECF No. 52-2 ("SUF"). The motion only seeks partial summary judgment on Shenon's bad faith claim, and her related request for punitive damages. Shenon filed an opposition, and a statement of genuine disputes, on December 16, 2019. See ECF No. 58 ("Opp."), ECF No. 58-1 ("SGD"). NYL filed a reply on December 30, 2019. See ECF

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:18-CV-00240-CAS (AGRx) | Date | January 13, 2020 |
|----------|--------------------------|------|------------------|
| Title | SHENON V. NEW YORK LIFE INSURANCE CO., ET AL. | | |

No. 62 ("Reply"). The Court held a hearing on January 13, 2020, and issued a tentative ruling that would have granted summary judgment in favor of NYL.

Having carefully considered the parties' arguments, the Court now finds and concludes as follows.

## II.   FACTUAL BACKROUND

The following facts are not materially disputed and are set forth for purposes of background. Unless otherwise noted, the Court references only facts that are uncontroverted and as to which evidentiary objections have been overruled.

NYL issued Shenon a long term care insurance policy on June 1, 2001. SGD ¶ 1. The policy provides benefits if an insured is "unable to perform without continual Substantial Assistance from another individual 2 or more of the following 6 Activities of Daily Living ["ADL"]: Dressing, Eating, Continence, Toileting, Transferring, and Bathing due to a loss of functional capacity." Id. ¶ 2.

Shenon filed the claim that is the subject of this lawsuit on June 26, 2017. Shenon claims that she fell while showering in February 2017, injuring her right shoulder, and requiring her to obtain caregiving assistance. Id. ¶ 8. Shenon also reported scheduling a knee replacement surgery for August 2017, although it is not clear whether that procedure is related to the reported showering accident. Id. NYL received the claim, and sent Shenon a series of forms to complete, including a provider questionnaire for Shenon's reported caregiver—Galyna Naratovska—to complete. Id. ¶ 9. Shenon returned the forms, including the provider questionnaire, on July 5, 2017. Id. In her responses to the questionnaire, Naratovska represented that she provides Shenon with bathing, showering, dressing, toileting, light housekeeping, meal preparation, and massage services. Id.

Shenon's claim raised certain "red flags"—specifically, Shenon's age, reported disability, and the fact that she received care from an unlicensed caregiver—that NYL determined warranted additional investigation. Id. ¶¶ 10-11. Following its internal "triage" procedures for claims that raise these concerns, NYL directed Shenon's claim to its Business Integrity Unity ("BIU") for that additional review. Id. The BIU process uses more searching investigative tools, such as supplemental medical reviews and surveillance, to confirm the veracity of a claim. Id. ¶ 11. Shenon claims that the BIU's "enhanced" process is intended and applied by NYL to raise the chances that a claim will be denied by subjecting claims to a different, and unfair, standard of review. Id. NYL denies that and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:18-CV-00240-CAS (AGRx) | Date | January 13, 2020 |
| Title | SHENON V. NEW YORK LIFE INSURANCE CO., ET AL. | | |

claims that the BIU process merely ensures a more thorough review that might, but need not, lead to a denial, depending on the facts discovered. <u>Id.</u> It is undisputed, however, that NYL created and uses the BIU process to "facilitate prompt investigation of suspicious claims." <u>Id.</u> ¶ 10.

Pursuant to its BIU investigation, NYL sent registered nurse Ann Doyle to examine and assess Shenon in person on July 11, 2017. <u>Id.</u> ¶ 12. Naratovska attended the examination. <u>Id.</u> At the examination, Shenon told Doyle that she "had a long history of osteoarthritis, chronic pain, fibromyalgia, sciatica, bilateral knee pain, and spinal stenosis." <u>Id.</u> ¶ 13. Shenon also stated that she experienced "constant daily" pain in her right shoulder and left knee at a maximum level. <u>Id.</u> When Doyle asked Shenon to walk, Shenon leaned to the side and favored her left knee, walking very slowly with a shuffle. <u>Id.</u> Shenon also stated that she required assistance with bathing and dressing "every time," and more than half the time with mobility and transferring. <u>Id.</u> ¶ 14. Asked to demonstrate the use of her arms, Shenon presented with an inability "to lift arms above shoulder level" and indicated that "she is not able to reach her feet at all." <u>Id.</u> Doyle also observed that Shenon uses a lift chair to stand up. <u>Id.</u> Doyle also reported that Shenon stated she had not driven since February 2017, and that Shenon relies on her husband and her caregiver to drive her to appointments, but Shenon denies telling Doyle this. <u>Id.</u> ¶ 15. According to Shenon, she feels able to drive some days, but not others. <u>Id.</u>

After completing the assessment and returning to her car, Doyle observed Naratovska leaving Shenon's home. <u>Id.</u> ¶ 16. Surveillance by NYL confirmed Doyle's observation, and observed Shenon driving afterward. <u>Id.</u> ¶ 19. Doyle noted that this was odd, because it was Doyle's impression that Naratovska was intended to drive Shenon to physical therapy following the examination. <u>Id.</u> ¶ 16. Shenon claims that she always intended to drive herself to that appointment, and never expressed otherwise to Doyle. <u>Id.</u> In addition to driving, NYL's surveillance from that date also shows Shenon putting on slip-on shoes without assistance. <u>Id.</u> ¶¶ 18-19.

Following the assessment and examination in July 2017, NYL sent Shenon a letter requesting medical records. Dr. Andrew Sptizer provided an attending physician statement ("APS") attaching the requested records. <u>Id.</u> ¶¶ 21-22. Spitzer stated that he had diagnosed Shenon with degenerative joint disease in her left knee with an onset date at some point in 2012. <u>Id.</u> ¶ 23. Dr. Stephen Kay also submitted an APS stating that Shenon had a recurring right rotator cuff tear with an onset date of February 20, 2017. <u>Id.</u> ¶ 26. Another physician, Dr. Elena Spektor, submitted an APS stating that Shenon suffered from a variety of medical

**CIVIL MINUTES – GENERAL**         **'O'**

| Case No. | 2:18-CV-00240-CAS (AGRx) | Date | January 13, 2020 |
| --- | --- | --- | --- |
| Title | SHENON V. NEW YORK LIFE INSURANCE CO., ET AL. | | |

conditions including fibromyalgia, carpal tunnel syndrome, chronic fatigue, and depression. Id. ¶ 27.

NYL conducted additional surveillance of Shenon in August 2017. Id. ¶ 28. On August 29, 2017, NYL observed Shenon raising her arms, with her hands above head level. Id. ¶ 29. The surveillance also shows Shenon using her hands to push off and rise from her chair unassisted, carry a purse in her right hand, and open doors and enter stores without assistance. Id. Surveillance from September and October 2017 show Shenon walking without a cane, entering and exiting a vehicle, bending into the back seat of a car, driving, working with her hands, shopping at a grocery store, and bending at the waist to reach for items, without assistance. Id. ¶¶ 33-36. Shenon reported to NYL that she was still receiving assistance with bathing, dressing, cooking, and housekeeping during this time. Id. ¶ 30.

In October 2017, Shenon submitted invoices to NYL reflecting caretaking services that she claimed to have received from Naratovska during the period June 2017 to October 2017. Both Shenon and Naratovska signed the invoices, certifying that the services listed on the invoices were in fact provided at the stated dates and times. Id. ¶¶ 40-41. In 22 instances, NYL found that Shenon claimed to have received care from Naratovska at times that surveillance revealed that such care would not have been possible because Shenon and Naratovska were in separate locations. Id. ¶ 41. Shenon does not dispute the discrepancies, but claims they result from innocent mistakes. Id. ¶¶ 41-42. After reviewing the surveillance NYL collected and turned over to Shenon during discovery in this action, Shenon submitted amended invoices in January 2019 that no longer conflict with the findings of the surveillance; however, NYL retained a forensic expert who claims that Shenon forged Naratovska's signature on these revised invoices. Id. ¶¶ 55, 57. Shenon denies these allegations. Id.

Not long after Shenon submitted the original invoices to NYL in October 2017, NYL attempted to retain a physician to conduct an independent medical examination of Shenon, but scheduling issues precluded that examination from going forward in a timely manner. Instead, in order to provide Shenon with a prompt decision on her claim, NYL retained Dr. Theresa Oney to complete a paper review of Shenon's medical records, Doyle's report, and the surveillance collected by NYL. Id. ¶ 45. Dr. Oney concluded from her analysis that Shenon is "able to perform her usual daily activities," has "only mildly limited range of motion and weakness in the right upper extremity," and "did not appear to be limited by pain or any other musculoskeletal deficits." Id. ¶ 46. Dr. Oney determined that Shenon

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**               **'O'**

| Case No. | 2:18-CV-00240-CAS (AGRx) | Date | January 13, 2020 |
|---|---|---|---|
| Title | SHENON V. NEW YORK LIFE INSURANCE CO., ET AL. | | |

did not suffer from any limitations that would restrict Shenon from performing her ADLs independently. Id. ¶ 47.

Based on Dr. Oney's conclusions, Doyle's report, the surveillance, and the discrepancies in Shenon's invoices, NYL determined on December 4, 2017 that it could not approve Shenon's claim. Id. ¶ 47. NYL left open the possibility, however, that it could revisit its decision after NYL had an opportunity to retain a physician to conduct an additional independent medical examination. Id. Shenon responded by filing this action on December 11, 2017. See Compl.

NYL conducted additional surveillance during the pendency of this litigation. The surveillance showed Shenon walking normally for extended periods of time, driving herself, bending at the waist, reaching and lifting without assistance, and, at one point, balancing on one foot while changing shoes. Id. ¶ 62.

During this time, NYL also obtained an independent medical examination from Dr. Kevin Ehrhart. On August 7, 2019, Dr. Ehrhart opined that he found nothing in his examination that indicated that Shenon required "any type of home healthcare on a continual basis," and no objective, verifiable, observable evidence to support the limitations Shenon reported. Id. ¶¶ 63-65. Dr. Ehrhart also observed that, when prompted to demonstrate how she walks, Shenon proceeded to perform a staggering and "totally non-credible gait" inconsistent with the type of gait one would have expressed had they actually had the sort of limited knee function Shenon claimed. Id. Dr. Ehrhart also reviewed the surveillance footage, which confirmed his determination that Shenon's reported limitations were not credible. Id.

Shenon subsequently retained Dr. Glenna Tolbert to examine her and prepare her own report of Shenon's limitations. Id. ¶¶ 66-68. Dr. Tolbert conducted an examination and reviewed Shenon's medical records to prepare a written report. Dr. Tolbert did not review NYL's surveillance footage prior to writing her report. In her report, Dr. Tolbert concluded that Shenon needed assistance with all of her ADLs. Id. At her deposition, Dr. Tolbert was shown some of NYL's surveillance footage, and stated that nothing in the surveillance footage changed her opinion about Shenon's limitations. Id. Dr. Ehrhart reviewed Dr. Tolbert's report, and stated that he disagreed with its findings. Id. ¶ 68.

NYL determined that it was required to report Shenon for suspected fraud to the California Department of Insurance, which it did on September 3, 2019. Id. ¶ 69.

## III.   LEGAL STANDARD

Summary judgment is only appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also Fed. R. Civ. P. 56(c), (e). Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the evidence presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See Matsushita, 475 U.S. at 587.

## IV.   DISCUSSION

NYL moves for partial summary judgment on Shenon's bad faith claim, as well as her related request for punitive damages.

In California, an insured plaintiff may hold its insurer liable in tort for denying her coverage in bad faith by bringing a claim for tortious breach of her insurance contract's implied covenant of good faith and fair dealing. See Kransco v. Am. Empire Surplus Lines Ins. Co., 23 Cal. 4th 390, 400 (2000) (holding that "an insurer's breach of the implied covenant will provide the basis for an action in tort") (citing Foley v. Interactive Data Corp.,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL                                    'O'

| Case No. | 2:18-CV-00240-CAS (AGRx) | Date | January 13, 2020 |
| Title | SHENON V. NEW YORK LIFE INSURANCE CO., ET AL. |

47 Cal. 3d 654, 684 (1988)). Because a bad faith claim sounds in tort, it avails a prevailing plaintiff to punitive damages, as well as contract remedies. Id. at 400 (stating that the "availability of tort remedies in the limited context of an insurer's breach of the covenant advances the social policy of safeguarding an insured in an inferior bargaining position who contracts for calamity protection, not commercial advantage"); see also Cont'l Ins. Co. v. Superior Court, 37 Cal. App. 4th 69, 86 (1995) (punitive damages available to remedy an established bad faith claim). To receive punitive damages, "in addition to proving a breach of the implied covenant of good faith and fair dealing proximately causing actual damages, the insured" must prove "by clear and convincing evidence that the insurance company itself engaged in conduct that is oppressive, fraudulent, or malicious." Amadeo v. Principal Mut. Life Ins. Co., 290 F.3d 1152, 1164 (9th Cir. 2002) (internal marks omitted). Punitive damages may be awarded against an insurer found liable in bad faith, for example, where "the insurer's bad faith was 'part of a conscious course of conduct, firmly grounded in established company policy.'" Id. at 1165 (quoting Neal v. Farmers Ins. Exch., 21 Cal. 3d 910, 923 (1978)).

"The key to a bad faith claim is whether or not the insurer's denial of coverage was reasonable." Guebara v. Allstate Ins. Co., 237 F.3d 987, 992 (9th Cir. 2001) (applying California law). Although "the reasonableness of an insurer's claims-handling conduct is ordinarily a question of fact," a court can conclude as a matter of law that an insurer's denial of a claim is *not* unreasonable—and that bad faith liability cannot be imposed—if there existed a "genuine issue" as to the insurer's liability at the time it denied coverage. Chateau Chamberay Homeowners Ass'n v. Associated Int'l Ins. Co., 90 Cal. App. 4th 335, 346 (2001); accord Lunsford v. American Guarantee & Liability Ins. Co., 18 F.3d 653, 656 (9th Cir. 1994) (applying California law). To establish the existence of a genuine issue, an insurer does not need to prove that it was justified or correct in denying the claim—indeed, an insurer that relies on a "genuine issue" to deny coverage "might" still "be liable for breach of contract." Chateau, 90 Cal. App. 4th at 347. Rather, to defeat a bad faith claim pursuant to this "genuine dispute doctrine," an insurer need only establish that it possessed some reasonable factual basis to deny coverage in good faith. Wilson v. 21st Century Ins. Co., 42 Cal. 4th 713, 723, 723 n.7 (2007). "The 'genuine dispute' doctrine may be applied," for example, "where the insurer denies a claim based on the opinions of experts." Fraley v. Allstate Ins. Co., 81 Cal.App.4th 1282, 1291 (2000); see also Chateau, 90 Cal. App. 4th at 348 (concluding that an insurer's reliance on an expert opinion that supports the denial of a claim raises a "genuine issue" that defeats bad faith liability so long as the expert opinion is not dishonest, unreasonable, misleading, or the product of a inadequate investigation and review).

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:18-CV-00240-CAS (AGRx) | Date | January 13, 2020 |
|---|---|---|---|
| Title | SHENON V. NEW YORK LIFE INSURANCE CO., ET AL. | | |

Because the existence of a genuine issue that defeats bad faith liability is a question of law, it is the proper subject of a motion for summary judgment. Pertinent here, "an insurer is entitled to summary judgment based on a genuine dispute over coverage" if "the summary judgment record demonstrates the absence of triable issues . . . as to whether the disputed position upon which the insurer denied the claim was reached reasonably and in good faith." Wilson, 42 Cal. 4th at 724; accord Payaslyan v. Allstate Indem. Co., 610 F. App'x 659, 660 (9th Cir. 2015) ("Under California law, a bad faith claim can be dismissed on summary judgment if the insurer can show that there was a genuine issue as to the insurer's liability.") (citing Guebara v. Allstate Ins. Co., 237 F.3d 987, 992 (9th Cir. 2001)). In other words, if undisputed evidence establishes the existence of a good faith basis on which the insurer relied to deny the insured's claim, the insurer shall be entitled to judgment as a matter of law on the insured's bad faith claim. Id.

NYL contends that it relied on a number of facts that, taken together, supplied a good faith basis to deny Shenon's claim in December 2017. First, NYL compiled video evidence before its claim decision demonstrating Shenon performing tasks (such as bending, reaching, and raising her hands above her head) that it claims are inconsistent with Shenon's claimed physical limitations. See SGD ¶¶ 18-19, 28-30, 33-36. Second, prior to reaching its claim decision, NYL found that Shenon submitted inaccurate, and possibly fabricated, invoices, which provided NYL with an additional independent basis to question Shenon's credibility. Id. ¶¶ 40-41. Third, NYL claims that it reasonably relied upon the independent medical review of Dr. Oney, who reviewed relevant portions of the surveillance as well as Shenon's medical records, and concluded that Shenon did not suffer from any limitations that would restrict Shenon from performing her ADLs independently. Id. ¶¶ 45-47.[1]

---

[1] NYL also claims that its continued investigation of Shenon's claim adduced additional evidence that tended to corroborate its findings from its surveillance and Dr. Oney's report, SGD ¶ 62 (additional surveillance), id. ¶¶ 63-65, 68 (additional medical reviews), as well as additional evidence that cast further doubt on Shenon's credibility, id. ¶¶ 55-57 (potentially forged revised invoices). However, these are not facts that NYL possessed at the time it made its decision to deny Shenon's claim in December 2017, and are thus not part of the evidentiary record the Court may consider in determining whether NYL's claim decision was made in good faith.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:18-CV-00240-CAS (AGRx) | Date | January 13, 2020 |
| Title | SHENON V. NEW YORK LIFE INSURANCE CO., ET AL. | | |

These facts, NYL contends, present the same material circumstances that courts in the Ninth Circuit have found sufficient to raise a "genuine dispute" as to liability that entitles insurers to summary judgment against bad faith claims. See Guebara, 237 F.3d at 993-94 (discussing cases). According to NYL, in this case, as in those cases, a reasonable jury construing the evidence in the light most favorable to Shenon could not conclude that the NYL lacked a good faith basis to deny her claim, particularly because NYL offered to reconsider its denial of coverage, and continue an investigation into Shenon's claim, after reaching its initial claim decision in December 2017. See Shade Foods, Inc. v. Innovative Prod. Sales & Mktg., Inc., 78 Cal. App. 4th 847, 880 (2000) ("The insurer's willingness to reconsider its denial of coverage and to continue an investigation into a claim has been held to weigh to favor of its good faith."); Blake v. Aetna Life Ins. Co., 99 Cal. App. 3d 901, 924 (1979) (holding that Aetna's decision to continue to investigate a claim after initially denying it supported a finding that Aetna had acted in good faith); see generally SGD ¶ 47.

Notwithstanding the facts uncovered by the BIU investigation, however, Shenon argues that a reasonable jury could still find that NYL acted in bad faith because NYL's BIU investigation was *itself* "intended" and applied to "look for ways to deny the claim." Opp. at 24. "Failure to evaluate a claim objectively may give rise to a claim that the insurer 'unreasonably' withheld benefits due under the policy." Croskey et al., Cal. Prac. Guide: Insurance Litig. § 12:889 (2019) ("Croskey"). An insurer that "search[es] for ways to avoid paying a claim" by subjecting a claim to additional unwarranted scrutiny, for example, may be liable for bad faith denial. See Tomaselli v. Transamerica Ins. Co., 25 Cal. App. 4th 1269, 1281 (1994) (quoted in Croskey, § 12:889).

In Tomaselli, insureds brought an action against their homeowners' insurer for breach of contract and bad faith based on the insurer's denial of coverage for losses arising from defects in the foundation slab beneath the insured's home. Id. at 1274-75. The insurer denied the claim largely on the basis of facts it uncovered through a "examination under oath"—an "EUO"—of a soils engineer at the beginning of its investigation. Id. at 1275, 1281-82. The Court of Appeal affirmed the jury's verdict finding bad faith in part on grounds that "the mere conducting of the EUO evidenced bad faith" because (i) "EUO's are ordinarily administered to investigate fraudulent claims" and there was no evidence to suspect fraud, and (ii) the insurer "ordinarily did not use EUO's early in an investigation." Id. at 1282. The court in effect held that the use of this more searching investigative procedure without any factual basis to support its application, and in contravention to ordinary procedures, demonstrated a bad faith intent to manufacture a basis to deny the claim. Id.

**CIVIL MINUTES – GENERAL**            **'O'**

| Case No. | 2:18-CV-00240-CAS (AGRx) | Date | January 13, 2020 |
|---|---|---|---|
| Title | SHENON V. NEW YORK LIFE INSURANCE CO., ET AL. | | |

As the Court stated at oral argument, the contention raises a close question. Before oral argument, the Court tentatively found the reasoning and conclusion from the Tomaselli case distinguishable, and indicated that it was inclined against finding that NYL's use of the BIU process could be reasonably construed to evidence a bad faith intent to deny Shenon's claim ex ante. The Court's tentative ruling relied on evidence that NYL referred Shenon's claim to its BIU process on the basis of evidence matching certain preset factors identified in an initial screening that is generally applied to all claims that NYL receives; specifically, Shenon's reported age, diagnosis, and the fact that Shenon reported receiving care from an unlicensed caregiver triggered the additional review. Id. ¶¶ 10-11. These facts, the Court tentatively found, differentiated the instant case from Tomaselli—where the insurer elected *in that instance* to conduct an EUO *without any basis* to suspect fraud (the usual circumstance for an EUO)—because the referral to the BIU resulted from the general application of an objective standard intended to "facilitate prompt investigation of suspicious claims." Id. See Croskey, § 12:889 (use of an objective standard is not bad faith).

However, after hearing oral argument and reconsidering the summary judgment record, the Court concludes that Shenon has raised at least a triable issue that the BIU was created for, and in the case of her claim used to, "search for ways to avoid paying a claim." Tomaselli, 25 Cal. App. 4th at 1281; accord Croskey, § 12:889. Specifically, Shenon presents (i) a NYL PowerPoint presentation from September 2017 displaying an "LTC dashboard" that appears to indicate that "the establishment" of the BIU was potentially related to generating "process enhancements for denials" and (ii) deposition testimony from a NYL senior vice president agreeing that NYL has used independent medical examinations, surveillance, and peer reviews to provide "process enhancements for denials." See SGD ¶ 11 (citing Horrow Decl., Ex. N (Sept. 2017 LTC Dashboard), and Ex. I (Ball Dep., 61:2-63:13)). Although it is not certain from this evidence that the BIU process actually operates with the bad faith intent to deny or prejudge a claim, see SGD ¶ 11 (citing Horrow Decl., Ex. I (Ball Dep., 70:17-20, 70:21-25) and Ex. H (Wardas Dep., 187:23-190:15)), the Court finds that the record evidence, construed in the light most favorable to Shenon, creates a genuine dispute that defeats summary judgment. Anderson, 477 U.S. at 250.

The Court accordingly concludes that NYL is *not* entitled to summary judgment on Shenon's bad faith claim. Moreover, because Shenon has raised a triable issue that the application of the BIU process to *her claim* resulted from an improper company policy designed and used to deny claims, NYL is also *not* entitled to summary judgment on

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | | **'O'** |
|---|---|---|---|---|
| Case No. | 2:18-CV-00240-CAS (AGRx) | | Date | January 13, 2020 |
| Title | SHENON V. NEW YORK LIFE INSURANCE CO., ET AL. | | | |

Shenon's request for punitive damages. <u>See</u> <u>Amadeo</u>, 290 F.3d at 1165 (reversing summary judgment for insurer on insured's request for punitive damages in connection with bad faith claim because "a jury might conclude that [the inusrer's] actions were willful and rooted in established company practice") (internal marks omitted).

## V.    CONCLUSION

In accordance with the foregoing, the Court **DENIES** the motion for partial summary judgment.

IT IS SO ORDERED.

| | 00 | : | 32 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |